THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 18-40169 |
| | ) | |
| **SCHLETTER, INC.,** | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**OBJECTION OF MIDCAP FUNDING X TRUST TO DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND RELATED FIRST DAY MOTIONS**

Midcap Funding X Trust, a Delaware Statutory Trust (as successor-by-assignment to Midcap Financial Trust), as administrative agent for the lenders and as lender ("MidCap"), hereby objects to (i) the Emergency Motion filed by Schletter Inc. (the "US Debtor") for authority to use cash collateral (the "Cash Collateral Motion"), (ii) the related Motion for authority to pay with cash collateral, certain taxes that accrued pre-petition (the "Tax Motion"), and (iii) the related Motion for authority to pay with cash collateral, certain wages, compensation and employee benefits that accrued pre-petition (the "Wage Motion"), and respectfully states as follows:

**INTRODUCTION**

1. The US Debtor – having dismissed almost all of its staff and effectively ceased its operations – requests this Court's permission to use $467,363 of cash collateral to fund certain items that are neither necessary to avoid immediate and irreparable harm to its estate nor essential to continue the operation of its business. Further, the US Debtor's requested use of the cash collateral will not add value to MidCap's secured position, which is not adequately protected.

2. By way of background, on April 24, 2018 (the "Petition Date"), the US Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code"). Three days later, on April 27, 2018, the US Debtor filed its Cash Collateral Motion, seeking to use cash collateral for three weeks while it endeavors to find a lender to provide debtor-in-possession financing. On the same day, the US Debtor filed the Tax Motion and the Wage Motion.

3. On April 27, 2018, Schletter GMBH (the "Chapter 15 Debtor") filed a Verified Petition for relief under Chapter 15 of the Bankruptcy Code with this Court. Upon information and belief, the Chapter 15 Debtor became the subject of an insolvency proceeding in Germany on March 19, 2018. The Chapter 15 Debtor is seeking to have its proceeding recognized as a "foreign main proceeding". Upon information and belief, the Chapter 15 Debtor is the majority or sole shareholder of Schletter Unternehmen GmbH & Co. KG ("Unternehmen"), the sole shareholder of the US Debtor. Upon information and belief, Unternehmen is not the subject of an insolvency proceeding.

A. **MidCap's Loan & the US Debtor's Default**

4. MidCap is the US Debtor's secured lender and holds a properly-perfected first priority security interest in and lien against virtually all of the US Debtor's assets. MidCap's loan is documented, among other things, by the following: (a) a $15 Million Revolving Loan Note, dated February 10, 2016 (the "Note"); (b) a Credit and Security Agreement, dated February 10, 2016 (the "Security Agreement"); and (c) a UCC Financing Statement filed with the Delaware Secretary of State on February 10, 2016 (the "UCC", and together with the Note, the Security Agreement and all related agreements and documents, the "Loan Documents").

5. In the third quarter of 2017, the US Debtor defaulted in its obligations to MidCap. Among other things, significant accounts receivable aged out of the borrowing base contained in the Loan Documents, resulting in the US Debtor being in an over advanced position. From the date of the US Debtor's default until the Petition Date, while reserving all of its rights, MidCap refrained from exercising certain of its rights under the Loan Documents, advanced in excess of $450,000 to the US Debtor as discretionary funding, authorized the US Debtor's use of in excess of approximately $1,000,000 of its cash collateral and permitted the incurrence of subordinated secured debt. Nonetheless, and despite the US Debtor's apparent efforts to obtain alternative financing, the US Debtor has landed in Chapter 11.

B. **US Debtor's Cash Collateral Motion**

6. By the Cash Collateral Motion, the Tax Motion, and the Wage Motion, the US Debtor seeks to use $467,363 of cash collateral on an emergency basis over the next three weeks. As claimed by the US Debtor, it requires this use of cash collateral "to pay certain critical needs *it was unable to pay prepetition*", including past due insurance premiums, past due sales taxes and past due payments to employees. Cash Collateral Motion, para. 13 (emphasis added). However, for the most part, the US Debtor is not seeking to use cash collateral to pay costs that are being incurred as a result of the post-petition continuation of its business operations, but rather, to improperly pay pre-petition debts that are not beneficial to the estate.

7. Upon information and belief, the US Debtor's operations have been essentially shut down, and it was locked out of its Arizona facility pre-petition by its landlord. Indeed, although the US Debtor states that it has approximately 136 employees, the US Debtor seeks

to pay only 16 employees post-petition. Cash Collateral Motion ¶¶11, 13. Additionally, the Affidavit of Russell Schmit, dated April 27, 2018, filed in support of the US Debtor's petition and the US Debtor's First Day Motions (the "Schmit Affidavit"), confirms that the US Debtor intends to retain only 16 employees and is in liquidation mode. Specifically, Mr. Schmitt states that, the "Debtor, acting as a **liquidating fiduciary**, sent Warn Act notices to the employees and governmental authorities on April 25, 2018". Schmit Affidavit, p. 10, para 30. (emphasis added).

8. In light of these grim facts, it is clear that the US Debtor has no prospects to reorganize and nothing more than mere hopes for even an orderly liquidation. Instead, the US Debtor suggests that the Chapter 15 Debtor, which has been restructuring in Germany for two years, now "intends" to sell its assets and is "contemplat[ing]" that the sale will include the stock of Unternehmen, the parent of the US Debtor. Schmit Affidavit, pp. 7-8, ¶¶ 22-23. However, a purchaser has not yet been identified, a minimal price for the sale has not been established and there has not been an allocation of the purchase price to the US Debtor's stock nor any indication if any of that money would flow to the US Debtor's creditors.

9. Most disturbing, however, is the fact that the plan of the Chapter 15 Debtor, as apparently adopted by the US Debtor, of selling the US Debtor's stock will not result in any value for the creditors of the US Debtor. Instead, it will provide value to the US Debtor's German equityholders without first paying all creditors of the US Debtor in full. Such a maneuver would violate the Absolute Priority Rule, as well as the priorities established by the Bankruptcy Code. *See* 11 U.S.C. Sections 1129(b)(2) and 507.

10. Finally, MidCap submits that the US Debtor has significantly overvalued its assets in the Cash Collateral Motion, and that upon the submission of evidence, the Court

will find that while MidCap is fully secured, the US Debtor has absolutely no equity in its assets. Moreover, there appears to be mathematical errors in the valuation numbers set forth in the Cash Collateral Motion.

## OBJECTION

11. The Debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section". 11 U.S.C. Section 363. A court may not authorize the use of cash collateral over the objection of a secured creditor, unless it determines that the secured creditor's interest in cash collateral is adequately protected. 11 U.S.C. Section 363(e). The debtor has the burden of proof on the issue of adequate protection. 11 U.S.C, Section 363(p)(1).

12. "In a preliminary hearing for the use of cash collateral, the court 'may authorize the use of ***only that amount of cash collateral as is necessary to avoid immediate and irreparable harm*** to the estate pending a final hearing.'" *In re Easthaven Marina Grp., LLC*, No. 08-05453-8-JRL, 2009 WL 500847, at *1 (Bankr. E.D.N.C. Feb. 26, 2009) (quoting Fed. R.Bankr.P. 4001(b)(2)) (emphasis added). The US Debtor has failed to demonstrate that any immediate and irreparable harm will befall its estate if it is not permitted to use cash collateral. Indeed, the US Debtor's business is essentially shut down. It does not have an immediate need for the use of cash collateral to preserve its assets or fund its business operations. Instead, the US Debtor seeks to use cash collateral primarily to pay expenses that have absolutely nothing to do with the preservation of the US Debtor's assets or operation of the US Debtor's business post-petition.

13. For example, although most of the US Debtor's employees have been dismissed or furloughed, and its operations have been virtually halted, the US Debtor requests the use of cash collateral over the objection of its secured creditor to fund pre-petition employee related costs, such as health and medical insurance in the amount of $84,138 and workman's compensation insurance in the amount of $48,723. Cash Collateral Motion, ¶ 13 and budget attached as Exhibit A. These expenses are not necessary to the preservation of the assets of the US Debtor's estate or the operation of its business post-petition. Similarly, the US Debtor seeks to use cash collateral in the amount of $75,000 to pay past due pre-petition sales taxes, which are not necessary to the preservation of the US Debtor's business or the assets of its estate.

14. Additionally, "[i]n considering whether to authorize use of cash collateral, the Court **must be sure** that the interests of the holder of the secured claim are adequately protected….[t]he Court must decide whether the US Debtor's use of the bank's cash collateral is adequately protected. Before reaching that question, however, the Court should consider whether there is no reasonable chance of **reorganization**, for if there be none, there is no point in jeopardizing the bank's cash collateral". *In re C.F. Simonin's Sons, Inc.,* 28 B.R. 707, 711 (Bankr. E.D.N.C. 1983) (emphasis added). Finally, the restriction of a debtor's use of cash collateral is "in recognition of the unique nature of cash collateral and the risk to the entity with an interest therein arising from the consumption of the collateral." *In re Grandfather Mountain Ltd.*, No. 2:96CV85, 1997 WL 34740256, at *3 (M.D.N.C. Jan. 29, 1997) (quoting Collier on Bankruptcy). Accordingly, courts may consider whether there is a reasonable prospect of reorganization or whether the US Debtor's proposed use is needlessly jeopardizing the secured party's cash collateral.

15. In determining whether a debtor is entitled to use cash collateral over a secured creditor's objection, a Court must look at the totality of the circumstances of the case before it. While courts do permit the use of cash collateral on an interim basis over the objections of secured creditors, this is a case where use of cash collateral should be denied…even on an interim basis.

16. In the instant case, there is no reasonable prospect of reorganization. Mr. Schmit was retained as the Chief Executive Officer of the US Debtor in June, 2017. Schmit Affidavit p. 1, ¶ 1. Mr. Schmit admits that the US Debtor is acting as a "liquidating fiduciary" and "mismanaged" its business in 2017. This mismanagement resulted in "losses of over $10 million", allowing liens to be filed against the US Debtor, customers to stop paying the US Debtor, litigation, and ultimately, causing MidCap to find itself in an over-advanced position. *Id*., at p. 10, ¶ 30 and pp. 6-7, ¶¶ 19-21. Consequently, the US Debtor's operations were virtually shut down pre-petition and there is no going concern to preserve. Use of cash collateral will not prevent imminent and irreparable harm to the US Debtor's estate—but it will needlessly jeopardize MidCap's collateral position, while the US Debtor waits to see whether the Chapter 15 Debtor will find a purchaser that will fund distributions to the US Debtor's creditors. This is the only bankruptcy exit strategy suggested by the US Debtor. *Id*., at p. 8, ¶ 23. Certainly, this pure speculation cannot justify the use of cash collateral over the objection of the US Debtor's secured creditors. Indeed, the Chapter 15 Debtor does not own the stock of the US Debtor. Nonetheless, if a bid is submitted in the Chapter 15 Debtor's German insolvency proceeding to purchase the stock of the US Debtor, it a practical impossibility that such a sale would benefit the US Debtor's estate, after

payment of administrative expense creditors, more than the immediate liquidation of the US Debtor under Chapter 7 of the Bankruptcy Code.

Accordingly, the US Debtor has failed to satisfy its burdens of demonstrating (a) that absent authority to use cash collateral it will be immediately and irreparably harmed, and (b) that MidCap's interests would be adequately protected if it is authorized to utilize cash collateral over MidCap's objection.

## CONCLUSION

WHEREFORE, MidCap respectfully requests that this Court enter an Order:

(a) denying the US Debtor's Emergency Motion for authority to use cash collateral for three weeks;

(b) denying the US Debtor's request for a permanent order authorize the use of cash collateral;

(c) denying the US Debtor's emergency request for authority to pay taxes accrued pre-petition;

/////

/////

/////

{00408349.DOCX V. M565.025518;}    8

# 3549806

(d) denying the US Debtor's emergency request for authority to pay certain wages, compensation and employee benefits that accrued pre-petition; and

(e) granting such other and further relief as is just and appropriate under the circumstances.

Dated: May 1, 2018
Charlotte, North Carolina

HAMILTON STEPHENS
STEELE + MARTIN, PLLC

/s/ *Glenn C. Thompson*
Glenn C. Thompson (NC Bar No. 37221)
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 344-1117
Facsimile: (704) 344-1483
Email: gthompson@lawhssm.com

-and-

Deborah A. Reperowitz
STRADLEY RONON STEVENS & YOUNG, LLP
100 Park Avenue, Suite 2000
New York, New York  10017
Telephone: (212) 812-4138
Facsimile: (646) 682.7180
Email: dreperowitz@stradley.com

*Co-Counsel for* MIDCAP FUNDING X TRUST, a Delaware statutory trust (as successor-by-assignment to MidCap Financial Trust), as Administrative Agent for the Lenders and as Lender

{00408349.DOCX V. M565.025518;}    9

# 3549806

THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 18-40169 |
| | ) | |
| **SCHLETTER, INC.,** | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day copies of the *Objection of MidCap Funding X Trust to Debtor's Emergency Motion for Authority to Use Cash Collateral and Related First Day Motions* were served electronically on those parties receiving notice in this case through CM/ECF.

Dated: May 1, 2018
       Charlotte, North Carolina       HAMILTON STEPHENS
                                                  STEELE + MARTIN, PLLC

                                                  /s/ *Glenn C. Thompson*
                                                 Glenn C. Thompson (NC Bar No. 37221)
                                                 525 North Tryon Street, Suite 1400
                                                 Charlotte, North Carolina 28202
                                                 Telephone: (704) 344-1117
                                                 Facsimile: (704) 344-1483
                                                 Email: Gthompson@lawhssm.com