FILED & JUDGMENT ENTERED
Steven T. Salata

June 11 2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 18-40169 |
| | ) | |
| **SCHLETTER INC.,** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |
| | ) | |

## ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR; (II) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE OF ASSETS; AND (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF

Upon the motion (the "**Motion**")[1] of Schletter Inc. (the "**Debtor**"), pursuant to

sections 105(a), 363, 365, 503, 506, 507 and 552 of title 11 of the United States Code (the

"**Bankruptcy Code**"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (this "**Bidding**

**Procedures Order**"): (i) approving bidding procedures in connection with the sale of

substantially all assets of the Debtor, (ii) scheduling an auction and a hearing to consider

the sale of assets, (iii) approving the form and manner of notice thereof; and (iv) granting

---

[1] Capitalized terms used but not otherwise defined herein shall has the meanings ascribed thereto in the Motion.

related relief; and the Court having considered the Motion and all exhibits, objections, and other papers filed in connection therewith; and the Court having determined that the relief provided herein is in the best interest of the Debtor, its estate, creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

### FOUND AND DETERMINED THAT:[2]

A.      This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.      The Debtor's proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the Debtor's assets, and the Bidding Procedures to be employed in connection therewith.

---

[2]  Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.

CHAR2\2029162v5

D.      The Debtor has articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including: (i) the scheduling of a Bid Deadline, Auction, and Sale Hearing for the sale of the Debtor's assets; (ii) the approval of the Termination Fee and the Stalking Horse Bidder  protections and (ii) the establishment of procedures to fix the Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases.

E.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Debtor's assets.

F.      The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estates, creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the Motion or the relief provided herein that has not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.      The bid (the "Stalking Horse Bid") of Avenue Europe International Management L.P., a SEC-registered investment advisor and sub-advised by Avenue Europe Management, LLP (or its nominee) (the "Stalking Horse Bidder"), is hereby approved as the Stalking Horse Bid.    The Stalking Horse Bid shall be and hereby is deemed a Qualified Bid for all purposes of the Bidding Procedures, and the Stalking Horse Bidder shall be and hereby is deemed a Qualified Bidder for all purposes of the Bidding Procedures.

4.      Upon execution, the Debtor shall file the asset purchase agreement entered into between the Debtor and the Stalking Horse Bidder (the "Stalking Horse Agreement") as a supplemental exhibit to the Order.  The Stalking Horse Agreement will amend and replace the Bid.

5.      The Termination Fee to be paid to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Bid is hereby approved by the Court.  The Debtor is authorized to pay the Termination Fee to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Bid.  If the Stalking Horse Bid is terminated due to no fault of the Stalking Horse Bidder, or the Auction results in a sale or sales to a party or parties other than the Stalking Horse Bidder, the Deposit shall be returned to the Stalking Horse Bidder and the Termination Fee paid.  If the Stalking Horse Bid is terminated due to a breach by the Stalking Horse Bidder, the Deposit shall be forfeited and shall be retained by the Debtor's estate and no Termination Fee paid. If the Stalking Horse Bid is terminated by the Stalking Horse bidder for any reason (other than breach of the Debtor), including the failure to meet the contingencies in the Stalking Horse Bid, the Termination Fee will not be paid.

6.      The obligation of the Debtor and its estate to return the Deposit and to pay the Termination Fee constitute allowed superpriority administrative claims.  Except for the Stalking Horse Bidder, no other Potential Bidder shall be entitled to any breakup fee, overbid fee, termination fee, expense reimbursement, or similar type of payment.

7.      The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are incorporated herein and approved, and shall apply with respect to the sale of the Debtor's assets.  The Debtor is authorized to take all actions necessary or appropriate

to implement the Bidding Procedures.  In the event of any inconsistency between this Order and the Bidding Procedures, the terms of this Order shall be controlling.

8.    As further described in the Bidding Procedures, the deadline for submitting Qualified Bids for the Debtor's assets is **June 26, 2018, at 11:00 a.m.** prevailing Eastern time (the "**Bid Deadline**").  No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures, provided, however, that the Debtor may waive one or more non-material defects and cause a non-conforming bid to be deemed a Qualified Bid.

9.    If Qualified Bids are timely received by the Debtor in accordance with the Bidding Procedures, the Debtor may sell its assets by conducting an Auction.  The Auction shall be conducted in accordance with the Bidding Procedures and take place on **June 28, 2018, at 10:00 a.m.** prevailing Eastern time at the offices of Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202, or at such other place and time as the Debtor shall notify all Qualified Bidders and other invitees and creditors. If, however, no such Qualified Bid, other than the bid of the Stalking Horse Bidder, is received by the Bid Deadline, then the Auction will not be held and the Court will consider approval of the Stalking Horse Bid.

10.    Each Qualified Bidder participating at the Auction will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale.  The Auction will be conducted in an open cry format with all Qualified Bidders present in one room.    All potential bidders or their authorized

representatives must be present at the Auction and the Successful Bidder(s) and Back-up Bidder(s) must be present at the Sale Hearing.

11.     The Sale Hearing shall be held before this Court on **July 2, 2018, at 11:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel and interested parties may be heard.

12.     On or before June 12, 2018, the Debtor will cause a notice in substantially the form annexed hereto as **<u>Exhibit 2</u>** (the "**Notice of Auction and Sale Hearing**"), and a copy of this Bidding Procedures Order, to be sent, by first-class mail, postage prepaid, to the following:  (i) the Bankruptcy Administrator; (ii)  counsel to the pre-petition secured lenders; (iii) all parties who are known to assert a security interest, lien, or claim in any of the Assets, if any; (iv) all non-Debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (v) counsel to the Committee; (vi) any parties that have contacted the Debtor regarding purchasing all or a portion of the Debtor's assets, (vii) all relative governmental authorities, and (viii) in accordance with the notice procedures approved by the Court [D.E. 55].[3]  In addition to the foregoing, electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing also will be posted on the Court's electronic case filing (ECF) website and provided as the Court directs in the Bidding Procedures Order.

13.     On or before June 12, 2018, the Debtor will serve, by first class mail or hand delivery on all non-Debtor parties to the Executory Contracts and Unexpired

---

[3]  The Notice of Auction and Sale Hearing will direct parties to contact the Debtor's counsel for more information and will provide that any party in interest that wishes to obtain a copy of any related document, subject to any necessary confidentiality agreement, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

Leases, a notice of potential assumption, assignment and/or transfer of the Executory

Contracts and Unexpired Leases in substantially the form annexed hereto as **Exhibit 3** (the

"**Notice of Assumption and Assignment**").  The Notice of Assumption and Assignment

shall identify the calculation of the cure amounts that the Debtor believe must be paid to

cure all defaults under the Assigned Contracts (the "**Cure Amounts**").[4]

       14.     Unless the non-Debtor party to an Executory Contract or Unexpired

Lease files an objection (the "**Cure Amount/Assignment Objection**") to its scheduled

Cure Amount and/or (ii) the proposed assumption, assignment and/or transfer of such

Executory Contract or Unexpired Lease by **June 26, 2018, at 4:00 p.m. (prevailing

Eastern Time)** (the "**Cure/Assignment Objection Deadline**") and serves a copy of the

Cure Amount/Assignment Objection so as to be received no later than the

Cure/Assignment Objection Deadline by  counsel for the Debtor, Moore & Van Allen,

PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202 (Attn:  Hillary B.

Crabtree), then such non-Debtor party shall (i) be forever barred from objecting to the Cure

Amount and from asserting any additional cure or other amounts with respect to such

Executory Contract or Unexpired Lease and the Debtor shall be entitled to rely solely upon

the Cure Amount and (ii) subject to the procedures for objecting to adequate assurance of

future performance as set forth below, be deemed to have consented to the assumption,

assignment and/or transfer of such Executory Contract or Unexpired Lease to the

---

[4]   The inclusion of any contract or unexpired lease of nonresidential real property on any Notice of Assumption and
Assignment or Supplemental Notice of Assumption and Assignment shall not be an admission by the Debtor or its
estates that any such contract or unexpired lease so included is an executory contract.  Nor shall the inclusion of any
contract or unexpired lease on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and
Assignment constitute an admission of liability by the Debtor or its estates or effectuate the assumption or assignment
of such contract or lease, absent entry of an order of the Court approving the assumption and/or assignment of such
contract or lease of nonresidential real property in conjunction or as part of the Sale Order.

Successful Bidder(s) or Back-Up Bidder(s) and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder(s) or Back-Up Bidder(s), in relation to this sale, that any additional amounts are due or defaults exist, or additional conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract and Unexpired Lease.

15.     Cure Objections shall set forth the cure amount being claimed by the objecting party (the "**Claimed Cure Amount**"), the dates and corresponding amounts of the alleged defaults by the Debtor, and a brief statement of any and all other grounds for objection to assumption and assignment.  Upon receipt of a Cure Amount/Assignment Objection, the Debtor, with the approval of the Successful Bidder(s), may resolve any Cure Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court.  In the event that the Debtor, the Successful Bidder(s) and any objecting party are unable to consensually resolve any Cure Objection prior to the Sale Hearing, the Debtor shall request that the Court resolve such Cure Objection at the Sale Hearing.

16.     The Successful Bidder(s) or the Back-Up Bidder(s), as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Executory Contracts and Unexpired Leases to be assumed and assigned under the Purchase Agreement or Stalking Horse Agreement through the Closing Date; provided, however, the non-Debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

17.     The Notice of Assumption and Assignment shall state that an entity other than the Stalking Horse Bidder may be selected as the Successful Bidder(s) or Back-

Up Bidders at the Auction, and that any non-Debtor counterparty to any Executory Contract or Unexpired Lease wishing to know the identities of all Qualified Bidders (and therefore potential Successful Bidder(s), and the actual Successful Bidder(s), prior to the Sale Hearing, may provide such non-Debtor counterparty's email address or fax number to Debtor's counsel prior to the Bid Deadline. All such parties who provide an email address or fax number as provided above (i) will be emailed by Debtor's counsel the identities of all Qualified Bidders the day after the Bid Deadline; and (ii) if they wish, may request prior to the Auction copies from Debtor's counsel of the adequate assurance information submitted to the Debtor by any Qualified Bidder (which information shall be provided subject to such non-Debtor counterparty's entry into a confidentiality agreement acceptable to such Qualified Bidder). All such non-Debtor counterparties who provide an email address or fax number to Debtor's counsel in accordance with the foregoing will be notified of the Successful Bidder(s) by email from Debtor's counsel immediately (and by no later than two (2) hours) after the Auction concludes. If the Stalking Horse Bidder is not the Successful Bidder(s), then any objection by non-Debtor parties to the Assigned Contracts solely concerning the issue of whether the Successful Bidder(s) or Back-Up Bidders can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code may be raised at the Sale Hearing.

18.     Objections to the sale of the Debtor's assets, adequate assurance of future performance by the Stalking Horse Bidder or the relief requested in the Motion (other than with respect to the conduct of the Auction or adequate assurance of future performance by the Successful Bidder(s) if the Successful Bidder(s) are not the Stalking Horse Bidder) must: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local

Rules; (iii) be filed with the clerk of the Bankruptcy Court for the Western District of North

Carolina, on or before **June 29, 2018 at 12:00 p.m. (prevailing Eastern Time)** (the "**Sale**

**Objection Deadline**"), or such later date and time as the Debtor and other parties in interest

may agree; and (iv) be served so as to be received no later than 12:00 p.m. (prevailing

Eastern Time) on the same day upon the Bid.  Objections, if any, to the conduct of the

Auction, or (as provided in paragraph 14 hereof) adequate assurance of future performance

by the Successful Bidder(s) if the Successful Bidder(s) are not the Stalking Horse Bidder,

may be raised at the Sale Hearing.  All objections must state with specificity the nature of

such objection and will be heard by the Court at the Sale Hearing.

19.    The Notice of Auction and Sale Hearing and the Notice of

Assumption, and Assignment to be issued in connection with the proposed sales of the

Debtor's assets, substantially in the forms annexed hereto as **Exhibit 2** and **Exhibit 3**,

respectively, are approved.

20.    The Sale Hearing may be adjourned, from time to time, without

further notice to creditors or other parties in interest by announcement of said adjournment

in open Court.

21.    Except as otherwise provided in this Bidding Procedures Order or

the Bidding Procedures, the Debtor reserves the right, in consultation with the Committee

and the prepetition secured lenders, as they may reasonably determine to be in the best

interests of its estate to:  (i) determine which bidders are Qualified Bidders; (ii) determine

which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of

Qualified Bids is the highest or otherwise best proposal and which is the next highest or

otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in

conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor and its estate; (v) remove the Assets from the Sale; (vi) waive non-material terms and conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders (to the extent such modifications and/or additional terms and conditions are not more onerous to Potential Bidders than otherwise would be the case under the Bidding Procedures); (viii) upon notice and hearing to the Stalking Horse Bidder, Potential Bidders and the parties in interest to the extent practicable under the circumstances, adjourn or cancel the Auction and/or Sale Hearing  with the Court's approval; or (ix) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice. Nothing herein shall preclude any party-in-interest's right to challenge the Debtor's business decisions at the Sale Hearing.

22.    The Debtor shall use best efforts to contact and solicit liquidators, auctioneers, scrap dealers, customary trade parties in the industry and accounts receivable purchasers as potential bidders.

23.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and Bidding Procedures Order shall be effective immediately upon its entry.

24.    This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

This Order has been signed electronically.          United States Bankruptcy Court
The judge's signature and court's seal
appear at the top of the Order.

**EXHIBIT 1**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| **IN RE:** | **Case No. 18-40169** |
| **SCHLETTER INC.,** | **Chapter 11** |
| **Debtor.** | |

**BIDDING PROCEDURES**

By motion dated June 6, 2018 (the "**Motion**") filed by Schletter Inc. (the "**Debtor**") [Docket No. ___],[5] the Debtor sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale of substantially all, or certain of, the assets owned by the Debtor (collectively, the "**Assets**") in one or more lots to one or more Successful Bidder(s)s.

On [June 7, 2018], the United States Bankruptcy Court for the Western District of North Carolina (the "**Court**") entered an order (the "**Bidding Procedures Order**") which, among other things, (i) authorized the Debtor to determine and select the highest or otherwise best bid for the Assets (the "**Successful Bid(s)**") through the competitive bidding and auction process set forth below (the "**Bidding Procedures**"); and (ii) scheduled **July 2, 2018 at 11:00 a.m. (Prevailing Eastern Time)**, as the date and time that a hearing before the Court to consider the Debtor's request for approval of the Successful Bid(s) will be held (the "**Sale Hearing**"). As set forth below and in the Motion, the Debtor reserves the right to modify the Bidding Procedures in accordance with the Bidding Procedures Order.

The sale will be subject to competitive bidding as set forth herein, and approval of the Court pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

**Assets to be Sold**

The Assets available for potential purchaser are any and all of the assets owned by the Debtor in the course of its business. The Debtor is offering bidders the opportunity to bid on all and/or a subset(s) of the Assets and assume and assign executory contracts and unexpired leases (the "**Sale**").

---

[5]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**Stalking Horse Bidder and Expense Reimbursement**

Pursuant to the Bidding Procedures Order, the Court approved, among other things, the Debtor's selection of Avenue Europe International Management L.P., a SEC-registered investment advisor and sub-advised by Avenue Europe Management, LLP. (or its nominee) as the proposed stalking horse bidder for the Assets (the "**Stalking Horse Bidder**"), pursuant to that certain Bid by and among the Debtor and the Stalking Horse Bidder, and attached as an exhibit to the Bidding Procedures Order (the "**Bid**"). In the event that the Stalking Horse Bidder is not determined to be the Successful Bidder(s) (defined below), the Stalking Horse bidder is entitled to a return of its Deposit and Termination Fee equal to 3% of the Purchase Price (which is a fee of $78,000) as provided in and subject to the terms and conditions of the Bidding Procedures Order.

**Participation Requirements**

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in entering into a Sale for a portion or all of the Assets (a "**Potential Bidder**") must first deliver an executed confidentiality agreement in form and substance satisfactory to the Debtor and its counsel. A copy of the Debtor's standard proposed form of confidentiality agreement may be obtained by contacting Debtor's counsel at the contact information provided in the "Bid Deadline" section below, provided, however, if a Potential Bidder only intends to bid on machinery, inventory, equipment or tangible assets, a confidentiality agreement is not required .[6]

**Bid Requirements**

In order to participate in the bidding process and be deemed a "**Qualified Bidder**," a Potential Bidder must submit a "**Qualified Bid**" by **June 26, 2018, at 11:00 a.m. (prevailing Eastern Time) (the "Bid Deadline")**. The Debtor shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether its bids have been determined to be Qualified Bids by no later than **5:00 p.m. (prevailing Eastern Time) on June 26, 2018**. For the avoidance of doubt, the Stalking Horse Bidder on account of the Stalking Horse Agreement is a Qualified Bidder and, subject to the Stalking Horse Bidder's submission of the Deposit in accordance with the Stalking Horse Agreement, the Stalking Horse Agreement is a Qualified Bid. The Debtor reserves its right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of its bid and to indicate any non-material terms which may need to be made to make an otherwise non-conforming bid into a Qualified Bid or otherwise evaluate the bid. If no timely Qualified Bids are submitted by the Bid Deadline, the Debtor shall not hold the Auction and the Court shall consider approval of the Stalking Horse Bid. To constitute a Qualified Bid, a bid must, among other things:

(i)     provide to the Debtor and its counsel the most current audited and latest unaudited financial statements (collectively, the "**Financials**")

---

[6] To the extent any party executed a confidentiality agreement prior to the entry of an order approving these Bidding Procedures, such party does not need to execute another confidentiality agreement in order to comply with the Bidding Procedures or become a Qualified Bidder.

CHAR2\2029162v5

of the Potential Bidder(s), or, if any Potential Bidder is an entity formed for the purpose of a transaction with the Debtor, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtor that demonstrates the Potential Bidder's financial ability to consummate a Sale transaction and (y) a written commitment acceptable to the Debtor of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a Sale transaction (including being bound by the terms and conditions of the Bidding Procedures); provided that if any Potential Bidder is unable to provide Financials, the Debtor may accept such other information sufficient to demonstrate to the Debtor's reasonable satisfaction that such Potential Bidder has the financial wherewithal to consummate a Sale transaction.  Potential Bidders shall not be allowed to review or obtain the Financials of other Potential Bidders;

(ii)     include a cover letter identifying whether the Potential Bidder(s) propose to purchase some or all of the Assets and provide a list of partial assets if not for all Assets;

(iii)    state that the Potential Bidder(s) offer to consummate the Sale pursuant to a proposed form of purchase agreement (the "**Purchase Agreement**") and enclose a clean signed copy of the proposed Purchase Agreement; provided, however if the Potential Bidder(s) are only purchasing a portion of the assets, machinery, inventory, equipment or tangible assets, a written offer detailing the purchase offer and listing assets to be purchased in a form acceptable to the Debtor will be sufficient;

(iv)     if applicable, include a blackline comparison of the Purchase Agreement to the Stalking Horse Agreement, reflecting all of such Potential Bidder's proposed revisions, modifications, amendments, or other changes to the Stalking Horse Agreement;

(v)      if any bid is conditioned on the assumption and assignment of executory contracts and/or unexpired leases, then such Potential Bidder(s) shall be required to provide evidence of its ability to pay required cure amounts and to provide adequate assurance of future performance of such contracts or leases along with the bid;

(vi)     either (i) be an all-cash bid; or (ii) be accompanied with verified financing;

(vii)    provide that the total cash consideration offered by such bidder(s) purchasing all assets under its Purchase Agreement exceeds the consideration offered by the Stalking Horse Bidder under the

CHAR2\2029162v5

Stalking Horse Agreement plus the amount of the Termination Fee (the "**Initial Overbid Requirement**"); notwithstanding the above any bidder may make offers for less than all assets in any cash consideration amount and not be subject to the Initial Overbid Requirement;

(viii)   contain a list of the Debtor's executory contracts and unexpired leases with respect to which the Potential Bidder(s) seek assignment from the Debtor;

(ix)   confirm that the offer shall remain open and irrevocable until the closing of the Sale of the Assets as provided below;

(x)   be accompanied with a certified or bank check or wire transfer in an amount equal to ten percent (10%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the "**Minimum Deposit**"), which Minimum Deposit shall be (i) deposited into an escrow account pursuant to an executed escrow agreement; and (ii) used to fund a portion of the purchase price provided for in the bid;

(xi)   not be conditioned on obtaining financing; provided, however bids may be offered subject to other contingencies;

(xii)   fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation; and

(xiii)   identify whether they intend to employ any current employees and if so, which employees.

If a bid submitted on or prior to the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Debtor is entitled to work with the bidder in an effort to cure any non-material defects in the bid and to cause such bid to become a Qualified Bid prior to the commencement of the Auction. In addition, the Debtor may, with the consultation of the Committee and the Prepetition Lenders, waive one or more of the non-material requirements specified in the "Bid Requirements" section above and deem such bid to be a Qualified Bid prior to the commencement of or during the Auction; provided, however, that the Debtor may not waive the Initial Overbid Requirement if the sale is for all or substantially all assets. **THE DEBTOR MAY AGGREGATE SEPARATE BIDS FROM UNAFFILIATED POTENTIAL BIDDERS TO CREATE ONE QUALIFIED BID AND POTENTIAL BIDDERS MAY COMBINE TO SUBMIT A JOINT BID**, provided, however, that all such Potential Bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding.

A bid received from a Potential Bidder that meets the requirements set forth above which is timely received will be considered a Qualified Bid if the Debtor believes that such bid would be consummated if selected as a Successful Bid(s) (defined below).

CHAR2\2029162v5

After the Bid Deadline (defined below), the Debtor shall determine which Qualified Bid or combination of Qualified Bids represents the Starting Qualified Bid (defined below). Prior to the commencement of the Auction, the Debtor shall distribute copies of all Qualified Bids to each Qualified Bidder, and shall indicate therein which Qualified Bid has been selected by the Debtor as the Starting Qualified Bid (defined below).

Bid Deadline

**The Bid Deadline for submitting bids on the Assets by Potential Bidder(s) shall be June 26, 2018 at 11:00 a.m. (prevailing Eastern Time).**

Any Potential Bidder that desires to make a bid must deliver written and electronic copies of its bid so that it is actually received prior to the Bid Deadline by counsel for the Debtor, Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700, Charlotte, North Carolina 28202 (Attn: Doug Ghidina, Esq. (dougghidina@mvalaw.com)) and counsel for the Committee, Lowenstein Sandler LLP, 1 Lowenstein Drive, Roseland, New Jersey 07871 ((Attn: Jeffrey D. Prol, Esq. (jprol@lowenstein.com)).

**Obtaining Due Diligence Access**

The Debtor shall afford each Potential Bidder reasonable due diligence information. Site access shall be provided upon reasonable request to the Debtor at the discretion of the Debtor within its reasonable business judgment. Potential Bidders cannot question the Debtor's employees without the Debtor's consent. The due diligence period will end on the Bid Deadline (and for the avoidance of doubt, as provided above, a Qualified Bid may not be conditioned on obtaining financing or the outcome of any due diligence by the Potential Bidder).

The Debtor shall not be obligated to furnish any information relating to the Debtor, the Assets and/or the Sale to any person except to a Potential Bidder. The Debtor shall give each Potential Bidder reasonable access to all written due diligence information provided to another Potential Bidder.

The Debtor shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

**Due Diligence from Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtor or its advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtor to determine that a Potential Bidder is not a Qualified Bidder and that a bid made by a Potential Bidder or a Qualified Bidder is not a Qualified Bid.

**"As Is, Where Is"**

The Sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or

estates, except to the extent set forth in any applicable purchase agreement between the Debtor and the Successful Bidder(s). All of the Debtor's right, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Interests**"), if any, with such Interests to attach to the net proceeds of the Sale of the Assets, with the same validity and priority as existed immediately prior to such Sale.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the applicable Purchase Agreement, if any.

**The Auction**

If one or more Qualified Bids by one or more Qualified Bidder are received by the Bid Deadline (or if a non-qualified bid received by the Bid Deadline is qualified prior to the commencement of the Auction), other than the bid of the Stalking Horse Bidder, an Auction with respect to a sale of any or all of the Assets shall take place on **June 28, 2018, 10:00 a.m. (prevailing Eastern Time)**, at the offices of Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202, or at such other place and time as the Debtor shall notify all Qualified Bidders and other invitees. If, however, no such Qualified Bids other than the bid of the Stalking Horse Bidder is received by the Bid Deadline, or if a non-qualified bid received by the Bid Deadline is not qualified prior to the commencement of the Auction, then the Auction will not be held, the Stalking Horse Agreement shall be designated as the Successful Bid, and the Court shall consider approval of the Sale of the Assets to the Stalking Horse Bidder in accordance with the Stalking Horse Agreement at the Sale Hearing.

**Auction Rules:**

(i)     Only Qualified Bidders who have submitted a Qualified Bid for some or all of the Assets and its authorized representatives will be eligible to participate at the Auction and to increase its bids. Representatives of the pre-petition secured lenders and the Committee, if any, as well as any creditor of the Debtor, may attend the Auction. After the Bid Deadline, the Debtor shall determine which Qualified Bid or combination of Qualified Bids represents the then-highest or otherwise best bid for the Assets (the "**Starting Qualified Bid**"). During the course of the Auction, the Debtor shall inform each participant which Qualified Bid(s) reflects, in the Debtor's view the highest or otherwise best offer or combination of offers considering all offers and contingencies.

(ii)   The Auction will be conducted in an open cry format with all Qualified Bidders present in one room.  All potential bidders or their authorized representatives must be present at the Auction and the Successful Bidder(s) and Back-up Bidder(s) must be present at the Sale Hearing.

(iii)   Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or Sale; provided, however, in order to obtain the highest and/or otherwise best bid, the Debtor may engage in discussions with one or more Qualified Bidders if they determine, with the consultation of the Committee and the Prepetition Lenders (defined below), that the combination of all or any portion of bids received from such Qualified Bidders would yield the highest and/or otherwise best offer at the Auction.

**Other Terms**

All Qualified Bids, the Auction and the Bidding Procedures are subject to modification and/or additional terms and conditions as its announced by the Debtor (with the consultation of the Committee and the prepetition secured lenders Midcap Funding X Trust and Hynes Industries Inc. (the "**Prepetition Lenders**")) solely to the extent not inconsistent with the Bidding Procedures Order or these Bidding Procedures and to the extent such modifications and/or additional terms and conditions are not more onerous to Qualified Bidders than otherwise would be the case under the Bidding Procedures.  At the conclusion of the Auction, the Debtor shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents, in the Debtor's discretion (with the consultation of the Committee and the Prepetition Lenders, the Successful Bid(s) and close the Auction.  Prior to the entry of the Sale Order (defined below), the Debtor shall announce the identity of the Qualified Bidder or combination of Qualified Bidders who submitted the Successful Bid(s) at the Auction (the "**Successful Bidder(s)**").  If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid(s) at the Auction, (ii) definitive documentation has been executed in respect thereof and (iii) the Court has approved the Sale to the Successful Bidder(s).  Such acceptance by the Debtor is conditioned upon approval by the Court of the Successful Bid(s) and the entry of an order approving such Successful Bid(s).

Following completion of the Auction, neither the Debtor nor its representatives shall initiate contact with, solicit or encourage submission or any inquiries, proposals or offers by, any person in connection with any sale or other disposition of the Assets.

**Irrevocability of Certain Bids**

The Successful Bid(s) and the bid of the Qualified Bidder or combination of Qualified Bidders (the "**Back-Up Bidder(s)**") that submits the next highest or otherwise best bid or combination of bids (the "**Back-Up Bid(s)**") shall be irrevocable until the earlier of:  (i) thirty (30) days after entry of the Sale Order approving the Successful Bid(s); and, (ii) closing of the Sale to the Successful Bidder(s) or the Back-Up Bidder(s).  Following

the entry of the Sale Order, if the Successful Bidder(s) fails to consummate the Sale for any reason, the Back-Up Bid(s) will be deemed the new Successful Bid(s), and the Debtor will be authorized, but not required, to consummate the Sale with the Back-Up Bidder(s) without further order of the Court.  In such case, the defaulting Successful Bidder(s)'s Minimum Deposit or Deposit, as applicable, shall be forfeited to the Debtor and, solely to the extent provided for in the applicable Purchase Agreement or Stalking Horse Agreement, the Debtor (and/or the DIP Lender) shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder(s).

The Debtor will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below) and the Debtor will request that any Sale Order include certain findings from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder(s) was selected in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, (iii) consummation of the Sale contemplated by the Successful Bid(s) will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtor and its creditors, and (iv) the Successful Bidder acted in good faith and is entitled to the protections of the Bankruptcy Code Section 363(m).

**Sale Hearing**

A hearing to consider approval of the Sale of the Assets to the Successful Bidder(s) will take place on **July 2, 2018 at 11:00 a.m. (prevailing Eastern Time)**, before the Honorable J. Craig Whitley in the United States Bankruptcy Court for the Western District of North Carolina, 401 West Trade Street Charlotte, NC 28202.  If no other Qualified Bid is received by the Debtor and the Stalking Horse Bidder's original Stalking Horse Agreement is the Successful Bid, then the Court will consider entry of an order at the Sale Hearing authorizing and approving the Sale (the "**Sale Order**"), including the sale of the Assets to the Stalking Horse Bidder, pursuant to the terms and conditions of the Stalking Horse Agreement.  If a different bid or combination is the Successful Bid(s), then the Debtor anticipates that they will seek the entry of an order, modified as necessary to reflect the terms of the Successful Bid(s), authorizing and approving the sale of the Assets to the Successful Bidder(s).

**Return of Deposit**

Except as otherwise provided in this paragraph with respect to any Successful Bid(s) and any Back-Up Bid(s), the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within five (5) business days after the conclusion of the Sale Hearing.  The Minimum Deposit of the Successful Bidder(s) shall be held until the closing of the Sale of the Assets, as applicable, and applied in accordance with the Successful Bid(s).  The Minimum Deposit of any Back-Up Bidder(s) shall be returned upon or within the earlier of (i) thirty (30) days

after entry of the Sale Order (the "**Outside Back-Up Date**") or (ii) the closing of the Sale of the Assets to the Successful Bidder(s).

**Failure to Close**

If the Successful Bidder(s) fails to consummate the transaction in accordance with the terms of the applicable agreement executed by the Successful Bidder(s) by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtor shall: (i) solely to the extent provided for in the applicable Purchase Agreement or Stalking Horse Agreement, retain the Successful Bidder(s)'s Deposit or Minimum Deposit, as applicable; (ii) solely to the extent provided for in the applicable Purchase Agreement or Stalking Horse Agreement, maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder(s) at the highest price bid by the Back-Up Bidder(s) at the Auction, without the need for an additional hearing or Order of the Court.

**Reservation of Rights**

Except as otherwise provided in the Bidding Procedures Order or these Bidding Procedures, the Debtor reserves the right as it may reasonably determine to be in the best interests of its estates, with the consultation of the Committee and the Prepetition Lenders, to:  (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids are the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor and its estates; (v) remove the Assets from the Sale; (vi) impose additional non-material terms and conditions set forth herein with respect to all Potential Bidders; (vii) on prior notice and hearing before the Court, adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (viii) modify the Bidding Procedures, as the Debtor may determine to be in the best interests of its estates; or (ix) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice.

**Expenses**

Any Potential Bidder presenting bids shall bear its own expenses in connection with the proposed Sale, whether or not such Sale is ultimately approved.

CHAR2\2029162v5

**Exhibit 2**

Notice of Auction and Sale Hearing

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |
|---|---|
| IN RE: | **Case No. 18-40169** |
| **SCHLETTER INC.,** | **Chapter 11** |
| **Debtor.** |  |

## NOTICE OF AUCTION AND SALE HEARING

### PLEASE TAKE NOTICE THAT:

1.      On June 6, 2018, Schletter Inc. (the "Debtor") filed a motion (the "Motion")[7] [Docket No. ____] for entry of orders, among other things (i) approving bidding procedures (the "Bidding Procedures") in connection with the sale (the "Sale") of substantially all assets (collectively, the "Assets") of the Debtor; (ii) scheduling an auction and a hearing (the "Sale Hearing") to consider approval of the Debtor entering into a Sale; (iii) approving the form and manner of notice thereof; and (iv) granting related relief.  The Motion additionally requests entry of an order or orders (i) authorizing and approving a Sale free and clear of liens, claims, encumbrances and interests; (ii) approving the assumption and assignment of executory contracts and unexpired leases; and (iii) granting related relief.

2.      The Debtor is seeking to sell the Assets to the Successful Bidder(s) or Back-Up Bidder(s).  Approval of the sale of assets to either the Successful Bidder(s) or Back-Up Bidder(s) may result in, among other things, the assumption, assignment and/or transfer by the Debtor of certain executory contracts and unexpired leases.  If you are a party to an executory contract or lease with one or more of the Debtor, you will receive a separate notice that contains relevant dates and other information that may impact you as a party to any such executory contract or lease.

3.      On [June __, 2018], the United States Bankruptcy Court for the Western District of North Carolina entered the Bidding Procedures Order.  Pursuant to the Bidding

---

[7] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Procedures Order, if the Debtor receives any Qualified Bids (as defined in the Bidding Procedures), other than the bid of the Stalking Horse Bidder, auction for any or all of the Assets shall take place on **June 28, 2018, at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Moore & Van Allen PLLC, 100 North Tryon, Suite 4700, Charlotte, NC 28202, or at such other place and time as the Debtor shall notify all Qualified Bidders and other invitees and creditors. Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Schedule 1, by no later than **June 26, 2018, at 11:00 a.m. (prevailing Eastern Time)** (the "Bid Deadline"), may participate at the Auction. If, however, no such Qualified Bid is received by the Bid Deadline (other than the bid of the Stalking Horse Bidder), then the Auction will not be held. Any party that wishes to take part in this process and submit a bid for the Assets must submit its bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.      The Sale Hearing to consider approval of the Sale of the Assets to the Successful Bidder(s) or Back-Up Bidder(s) free and clear of all liens, claims and encumbrances will be held before the Honorable J. Craig Whitley in the United States Bankruptcy Court for the Western District of North Carolina, 401 West Trade Street Charlotte, NC 28202 on **July 2, 2018, at 11:00 a.m. (prevailing Eastern Time)**, or at such other time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

5.      Objections, if any, to the Sale, adequate assurance of future performance by the Stalking Horse Bidder, or the relief requested in the Motion (other than with respect to (i) cure amounts (which are subject to a separate notice)); or (ii) the conduct of the Auction or adequate assurance of future performance if the Stalking Horse Bidder is not the Successful Bidder (which are subject to paragraph 6 below)) must: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the clerk of the Bankruptcy Court for the Western District of North Carolina, Delaware, 401 West Trade Street, Room 111, Charlotte, NC 28202, on or before **June 29, 2018 at 12:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"), or such later date and time as the Debtor may agree; and be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon counsel for the Debtor, Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202 (Attn: Doug Ghidina, Esq.).

6.      Objections, if any, to the conduct of the Auction, or adequate assurance of future performance by the Successful Bidder if the Successful Bidder is not the Stalking Horse Bidder, may be raised at the Sale Hearing.

**7.      UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

8.      This Notice and the Sale Hearing is subject to the complete terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict and the Debtor encourages parties-in-interest to review such documents in their entirety.  Parties interested in receiving more information regarding the sale of the Assets or in obtaining a copy of any related document, subject to any necessary confidentiality agreement, may make a written request to proposed counsel for the Debtor, Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202 (Attn:  Hillary Crabtree, hillarycrabtree@mvalaw.com).

CHAR2\2029162v5

This [__] day of June, 2018

/s/ _____

Hillary B. Crabtree
N.C. State Bar No. 26500
M. Glenn Huether
N.C. State Bar No. 44481
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-3571
Telecopy: (704) 339-5968
Email: hillarycrabtree@mvalaw.com

*Attorneys for Debtor and Debtor in Possession*

CHAR2\2029162v5

<u>**Exhibit 3**</u>

Notice of Assumption and Assignment

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| **IN RE:** | **Case No. 18-40169** |
| **SCHLETTER INC.,** | **Chapter 11** |
| **Debtor.** | |

<u>**NOTICE OF ASSUMPTION AND ASSIGNMENT**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

      1.      On [June 7, 2018], the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order (the "<u>Bidding Procedures Order</u>"),[8] pursuant to sections 105(a), 363, 365, 503, 506, 507 and 552 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy, in the chapter 11 case of Schletter Inc. (the "<u>Debtor</u>") approving, among other things, the fixing of cure amounts (the "<u>Cure Amounts</u>") related to the Debtor's potential assumption, assignment and/or transfer of certain executory contracts, unexpired leases, and other agreements (the "<u>Executory Contracts and Unexpired Leases</u>") listed on **Exhibit A** annexed hereto in connection with the sale (the "<u>Sale</u>") of certain of the Debtor's assets (the "<u>Assets</u>").  The Debtor may assume, assign, and/or transfer the Executory Contracts and Unexpired Leases to the Successful Bidder or Back-Up Bidder for the Assets under the bidding procedures (the "<u>Bidding Procedures</u>") approved by the Bankruptcy Court and attached to the Bidding Procedures Order as Exhibit 1.  A hearing to consider approval of the Sale of the Assets to the Successful Bidder or Back-Up Bidder free and clear of all liens, claims and encumbrances will be held before the Honorable J. Craig Whitley in the United States Bankruptcy Court for the Western District of North Carolina, 401 West Trade Street Charlotte, NC 28202 on **July 2, 2018, at 11:00 a.m. (prevailing Eastern Time)**, or at such other time thereafter as counsel may be heard (the "<u>Sale Hearing</u>").

      2.      **The Debtor has identified the Executory Contract(s) or Unexpired Lease(s) to which you are a party listed on <u>Exhibit A</u>.**  In the event that a determination is made by the Debtor and the Successful Bidder(s) or Back-Up Bidder(s) to seek assumption and assignment of such Executory Contract(s) or Unexpired Lease(s) in connection with the Sale, the Debtor believe that any and all defaults (other than the filing of this Chapter 11 Case) and actual pecuniary losses under the Executory Contracts and

---

[8]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

CHAR2\2029162v5

Unexpired Leases can be cured by the payment of the Cure Amounts listed on **Exhibit A** annexed hereto.  If no amount is listed on the Notice of Assumption and Assignment with respect to an Executory Contract or Unexpired Lease, the Debtor believes that there is no Cure Amount applicable to such Executory Contract or Unexpired Lease.

3.      Any objections to (i) the assumption, assignment and/or transfer of an Executory Contract or Unexpired Lease; or (ii) the amount asserted as the Cure Amount (each, a "Cure Amount/Assignment Objection"), must be in writing and shall set forth the cure amount being claimed by the objecting party, the dates and corresponding amounts of the alleged defaults by the Debtor, and a brief statement of any and all other grounds for objection to assumption and assignment.  If a Cure Amount/Assignment Objection is timely filed, the Debtor, with the approval of the Successful Bidder, may resolve any Cure Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without order of the Court.  In the event that the Debtor, the Successful Bidder and any objecting party are unable to consensually resolve any Cure Objection prior to the Sale Hearing, the Debtor shall request that the Court resolve such Cure Objection at the Sale Hearing.

4.      Unless the Cure Amount/Assignment Objection is timely filed and served, the assumption, assignment and/or transfer of the applicable Executory Contracts and Unexpired Leases will proceed without further notice at the Sale Hearing.

5.      Parties that fail to file and serve timely Cure Amount/Assignment Objections shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease and the Debtor shall be entitled to rely solely upon the Cure Amount listed on **Exhibit A**; and (ii) subject to the procedures for objecting to adequate assurance of future performance as set forth below, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease to the Successful Bidder or Back-Up Bidder and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder or Back-Up Bidder, in relation to this sale, that any additional amounts are due or defaults exist, or additional conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.

6.      If no Cure Amounts are due under an Executory Contract or Unexpired Lease, or if the non-Debtor Party agrees to the Cure Amounts listed on **Exhibit A** hereto, and the non-Debtor party to the Executory Contract or Unexpired Lease does not otherwise object to the Debtor's assumption, assignment and/or transfer of the Executory Contract or Unexpired Lease, no further action needs to be taken on the part of that non-Debtor party.

7.      To be considered a timely Cure Amount/Assignment Objection, the Cure Amount/Assignment Objection must be filed with the Bankruptcy Court and served upon (i) counsel for the Debtor, Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202 (Attn:  Hillary Crabtree) ("MVA") by **June 26, 2018, at 4:00 p.m. (prevailing Eastern Time)** (the "Cure/Assignment Objection Deadline").

CHAR2\2029162v5

8.      Any objection (the "Stalking Horse Adequate Assurance Objection") concerning whether the Stalking Horse Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code must be in writing and set forth with specificity the nature of the objection.  To be considered a timely Stalking Horse Adequate Assurance Objection, the Stalking Horse Adequate Assurance Objection must be filed with the Bankruptcy Court and served upon MVA by **June 26, 2018, at 4:00 p.m. (prevailing Eastern Time) (prevailing Eastern Time)**.

9.      An entity other than the Stalking Horse Bidder may be selected as the Successful Bidder(s) or Back-Up Bidder(s) at the Auction.  The non-Debtor counterparty to any Executory Contract or Unexpired Lease wishing to know the identities of all Qualified Bidders (and therefore potential Successful Bidders(s)), and the actual Successful Bidder, prior to the Sale Hearing, may provide such non-Debtor counterparty's email address or fax number to Debtor's counsel (at the contact information provided below) prior to the Bid Deadline.  All such parties who provide an email address or fax number to Debtor's counsel as provided in the immediately preceding sentence (i) will be emailed by Debtor's counsel the identities of all Qualified Bidders the day after the Bid Deadline; and (ii) if they wish, may request prior to the Auction copies from Debtor's counsel of the adequate assurance information submitted to the Debtor by any Qualified Bidder (which information shall be provided subject to such non-Debtor counterparty's entry into a confidentiality agreement acceptable to such Qualified Bidder).  All such non-Debtor counterparties who provide an email address or fax number to Debtor's counsel in accordance with the foregoing will be notified of the Successful Bidder by email from Debtor's counsel immediately (and by no later than two (2) hours) after the Auction concludes.  If the Stalking Horse Bidder is not the Successful Bidder, then any objection by non-Debtor parties to the Assigned Contracts solely concerning the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code may be raised at the Sale Hearing.

10.      The Successful Bidder(s) or the Back-Up Bidder(s), as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Executory Contracts and Unexpired Leases proposed to be assumed and assigned under the Purchase Agreement or Stalking Horse Agreement through the Closing Date; provided, however, the non-Debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

11.      The Debtor's decision to sell, assign and/or transfer to the Successful Bidder(s) or Back-Up Bidder(s) the Executory Contracts and Unexpired Leases is subject to Court approval and the Sale Closing Date.  Accordingly, absent such Sale Closing Date, the Executory Contracts and Unexpired Leases shall not be deemed to be sold, assigned and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code.  The inclusion of any document on the list of Executory Contracts and Unexpired Leases shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).  Nor shall

the inclusion of any document constitute an admission of liability by the Debtor or their estates.

This [__] day of June, 2018

/s/ _____
Hillary B. Crabtree
N.C. State Bar No. 26500
M. Glenn Huether
N.C. State Bar No. 44481
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
Telephone: (704) 331-3571
Telecopy: (704) 339-5968
Email: hillarycrabtree@mvalaw.com

*Attorneys for Debtor and Debtor in Possession*

CHAR2\2029162v5